# EXHIBIT 1

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| DANIEL C. PETERSON and KRISTI J. PETERSON, husband and wife, | ) ) ) | DIVISION ONE |
| Appellant, | ) ) | No. 67177-4-I |
| v. | ) ) | |
| CITIBANK, N.A., AS TRUSTEE ON BEHALF OF HOLDERS OF THE AMERICAN HOME MORTGAGE ASSETS TRUST 2006-4, MORTGAGE BACKED PASS-THROUGH CERTIFICATES SERIES 2006-4; NORTHWEST TRUSTEE SERVICES, INC.; AMERICAN HOME MORTGAGE SERVICING, INC.; AMERICAN BROKERS CONDUIT; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; ALL PERSONS UNKNOWN, CLAIMING ANY VALID SUBSISTING INTEREST, AND RIGHT TO THE POSSESSION IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFFS' TITLE, OR ANY CLOUD ON PLAINTIFFS' TITLE THERETO; and DOES I-X, INCLUSIVE, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | UNPUBLISHED OPINION |
| Respondents. | ) ) ) | FILED:  September 17, 2012 |

DWYER, J. — Following the initiation of nonjudicial foreclosure proceedings against their property, Daniel and Kristi Peterson filed suit seeking to enjoin the trustee's sale and alleging various statutory and common law causes of action. The trial court dismissed the Petersons' claims against Mortgage Electronic

No. 67177-4-I/2

Registration System, Inc. (MERS) pursuant to CR 12(b)(6) and, in a separate

order, dismissed the Petersons' claims against Citibank and American Home

Mortgage Servicing, Inc. (AHMSI) pursuant to CR 12(c) based upon principles of

issue preclusion.  Because the Petersons' failed to allege the existence of facts

establishing a violation by MERS of the Washington Consumer Protection Act

(CPA), chapter 19.86 RCW, we affirm the trial court's order on the CR 12(b)(6)

motion.  In addition, we determine that the Petersons' initial notice of appeal was

insufficient to permit appellate review of the CR 12(c) order and, moreover, that

their filing of a second notice of appeal indicating an intent to appeal from that

order was untimely.  Accordingly, we grant the motion of Citibank and AHMSI to

dismiss the appeal of the trial court's CR 12(c) order.

I

On July 13, 2006, Daniel Peterson obtained a $579,975 home loan from

American Brokers Conduit (ABC), promising repayment by executing a

promissory note in favor of ABC.  As security for the note, Mr. Peterson executed

a deed of trust.  The deed of trust identified ABC as the lender, First American

Title Company as the trustee, and MERS as the beneficiary "acting solely as a

nominee for Lender and Lender's successors and assigns."[1]  The note was

thereafter sold to the American Home Mortgage Assets Trust 2006-4.  Citibank

---

[1] A deed of trust differs from a standard mortgage because it involves not only a lender
and a borrower, but also a third party called a trustee.  If a borrower defaults on the loan, the
trustee may conduct a nonjudicial foreclosure sale, the proceeds of which are conveyed to the
"beneficiary"—defined by statute as the "the holder of the instrument or document evidencing the
obligations secured by the deed of trust."  RCW 61.24.005(2).

No. 67177-4-I/3

serves as the trustee for this securitized trust.[2]  MERS, however, continued to act as the beneficiary—"solely as nominee" for the new note holder.

On June 3, 2008, the Petersons received notice from their loan servicer, AHMSI, informing them that their loan payments were set to substantially increase.[3]  The Petersons thereafter contacted AHMSI to request a loan modification.  AHMSI informed the Petersons that they must cease payments on the loan to qualify for such relief.  The Petersons stopped making payments in April 2009.  Nevertheless, AHMSI denied their request for a loan modification.

On December 18, 2009, Northwest Trustee Services (Northwest) transmitted a notice of default to the Petersons.  The notice identified Northwest as the agent of Citibank.  Citibank was identified as the note owner and the beneficiary under the deed of trust; AHMSI was identified as the loan servicer.  However, as of the date of this notice, MERS had not yet assigned its beneficial interest under the deed of trust to Citibank, nor had Citibank yet appointed Northwest as a successor trustee.[4]

Northwest thereafter scheduled a nonjudicial foreclosure sale for August 13, 2010.  On August 5, Mr. Peterson filed a voluntary petition for bankruptcy under Chapter 11 of the U.S. Bankruptcy Code that automatically stayed the

---

[2] Citibank's title as a "trustee" for the securitized trust appears to have generated some confusion in the pleadings.  Contrary to the facts alleged in the Petersons' complaint, Citibank did not serve as the trustee under the deed of trust but as the trustee of the securitized trust which held the Petersons' promissory note.
[3] The monthly loan payment increased from $2,150 to $4,628 in July 2008.
[4] Citibank did not name Northwest as the successor trustee until December 21, 2009, and MERS did not assign the beneficial interest under the deed of trust to Citibank until January 25, 2010.  Both the assignment of the deed of trust and the appointment of the successor trustee were recorded in King County on February 1, 2010.

No. 67177-4-I/4

pending foreclosure.  Citibank filed a motion for relief from stay in the bankruptcy proceeding in which Citibank requested an order allowing the foreclosure to proceed.  The bankruptcy court granted Citibank's motion and entered an order granting relief from the stay.

Northwest, on behalf of Citibank, thereafter initiated a new foreclosure action against the Petersons' property.  A second foreclosure sale was scheduled for December 10, 2010.  On December 1, 2010, the Petersons filed this lawsuit against Citibank, Northwest, AHMSI, MERS, and ABC.[5]  The complaint alleged causes of action for defective trustee's sale, defective initiation of foreclosure, quiet title, slander of title, breach of contract, violation of the CPA, and unjust enrichment.  In addition, the Petersons moved to enjoin the trustee's sale.

MERS thereafter filed a motion to dismiss the Petersons' breach of contract and CPA claims—the only claims brought against the company—for failure to state a claim upon which relief can be granted pursuant to CR 12(b)(6). In addition, Citibank, AHMSI, Northwest, and MERS moved for judgment on the pleadings pursuant to CR 12(c) and to dismiss for lack of jurisdiction pursuant to CR 12(h)(3).

On April 22, 2011, the trial court granted MERS's motion to dismiss and entered judgment in favor of MERS on all claims against MERS in the complaint. On that same day, the court granted the motion for judgment on the pleadings pursuant to CR 12(c) and entered judgment "in favor of Defendants on all claims

_____

[5] ABC ceased operations in August 2007 and did not participate in the litigation.

- 4 -

No. 67177-4-I/5

against them in the Complaint."  Applying principles of issue preclusion, the trial

court determined that Citibank was a "party in interest" with standing to proceed

in the foreclosure proceeding against the Petersons' property.

On May 19, 2011, the Petersons timely appealed from the order

dismissing the breach of contract and CPA claims against MERS.  On June 15,

2011, the Petersons filed a second document—entitled "amended notice of

appeal"—seeking review not only of the order on MERS's motion to dismiss but

also of the order granting the remaining defendants' motion for judgment on the

pleadings.

II

The Petersons first contend that their complaint alleged facts sufficient to

demonstrate a violation of the CPA and that, accordingly, the trial court erred by

granting MERS's motion to dismiss.[6]  We disagree.

Pursuant to CR 12(b)(6), a complaint may be dismissed for "failure to state

a claim upon which relief can be granted."[7]  For purposes of a CR 12(b)(6)

motion, we presume the plaintiff's allegations in the complaint to be true.  Cutler

v. Phillips Petroleum Co., 124 Wn.2d 749, 755, 881 P.2d 216 (1994).  Moreover,

in determining whether dismissal is warranted, we may consider hypothetical

facts outside of the record.  Burton v. Lehman, 153 Wn.2d 416, 422, 103 P.3d

1230 (2005).  Dismissal under CR 12(b)(6) is proper where "'it appears beyond

---

[6] The Petersons concede that the trial court did not err by granting the motion to dismiss their breach of contract claim.

[7] We review a trial court's decision to dismiss pursuant to CR 12(b)(6) de novo.  Gaspar v. Peshastin Hi-Up Growers, 131 Wn. App. 630, 634, 128 P.3d 627 (2006).

No. 67177-4-I/6

doubt that the plaintiff can prove no set of facts, consistent with the complaint, which would entitle the plaintiff to relief.'" Lawson v. State, 107 Wn.2d 444, 448, 730 P.2d 1308 (1986) (internal quotation marks omitted) (quoting Bowman v. John Doe, 104 Wn.2d 181, 183, 704 P.2d 140 (1985)).

The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. In order to prove a CPA claim, a plaintiff must establish: (1) that the defendant engaged in an unfair or deceptive act or practice, (2) that the act occurred in trade or commerce, (3) that the act impacts the public interest, (4) that the plaintiff suffered injury to his or her business or property, and (5) that the injury was causally related to the unfair or deceptive act. Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27, 37, 204 P.3d 885 (2009). Failure to satisfy even one element is fatal to a CPA claim. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 793, 719 P.2d 531 (1986).

Here, the Petersons contend that MERS engaged in unfair or deceptive conduct—the first element of a valid CPA claim—by falsely representing its authority to act as a beneficiary under the deed of trust.[8] Our Supreme Court has recently determined that MERS is "an ineligible beneficiary within the terms of the Washington Deed of Trust Act, if it never held the promissory note or other

---

[8] The Petersons further contend that Citibank's allegedly unauthorized appointment of Northwest as successor trustee constitutes an unfair or misleading practice. However, this action was taken by Citibank, not by MERS, and cannot support a CPA claim against MERS. Similarly, the Petersons' assertion that MERS transferred its purported interest only after Citibank initiated foreclosure proceedings also cannot support a CPA claim against MERS. It was Citibank, not MERS, that initiated the foreclosure proceeding prior to the transfer of the beneficial interest.

- 6 -

No. 67177-4-I/7

debt instrument secured by the deed of trust." Bain v. Mortg. Elec. Registration
Sys., No. 86206-1, slip op. at 29 (Wash. August 16, 2012) (internal quotations
marks omitted).  The court noted that many courts have determined that it is
"deceptive to claim authority when no authority existed and to conceal the true
party in a transaction." Bain, No. 86206-1, slip op. at 36 (citing Stephens v. Omni
Ins. Co., 138 Wn. App. 151, 159 P.3d 10 (2007); Floersheim v. Fed. Trade
Comm'n, 411 F.2d 874, 876-77 (9th Cir. 1969)).  Accordingly, the court
explained, "characterizing MERS as the beneficiary has the capacity to deceive
and thus . . . presumptively the first element [of a CPA claim] is met." Bain, No.
86206-1, slip op. at 37.

        In the case at hand, MERS does not dispute the Petersons' assertion that
the company never held the promissory note secured by the deed of trust.
Moreover, given the procedural posture of this case, we must presume the
allegations contained in the complaint are true. Cutler, 124 Wn.2d at 755.
Accordingly, the first element of the Petersons' CPA claim is presumptively met.

        Nevertheless, in order to plead a valid CPA claim, a plaintiff must also
allege facts demonstrating that his or her injuries were caused by the deceptive
practice.  In order to prove causation, the "plaintiff must establish that, but for the
defendant's unfair or deceptive practice, the plaintiff would not have suffered an
injury." Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc., 162
Wn.2d 59, 84, 170 P.3d 10 (2007).  Our Supreme Court has explained that with
regard to a CPA claim against MERS, causation necessarily depends upon the
facts of a particular case. Bain, No. 86206-1, slip op. at 38.

- 7 -

No. 67177-4-I/8

Here, the Petersons' asserted injuries consist of the resources expended to "avert an unlawful foreclosure" and "the cloud of title arising from those foreclosure proceedings."  However, the Petersons alleged no facts demonstrating how these injuries flowed from the improper characterization of MERS as a beneficiary on the deed of trust.  Our Supreme Court has indicated that injuries under the CPA may arise where, due to MERS's actions, the homeowner is unable to locate the holder of the note and, as a result, suffers some harm to his or her interests.  <u>Bain</u>, No. 86206-1, slip op. at 38.  No such circumstances, however, were present here.  Nothing in the Petersons' pleadings indicated that they were misled by MERS regarding the identity of the holder of the promissory note; nor did they assert that such ignorance led, even indirectly, to the initiation of foreclosure proceedings against their property.

Indeed, the Petersons alleged no facts tending to demonstrate that, but for MERS's conduct, they would not have suffered these same injuries.  It is undisputed that the Petersons defaulted on their loan and that it was this default that led to the foreclosure proceedings.  The Petersons do not contend that any action by MERS caused or induced the Petersons to default on the loan.  Nor do the Petersons assert that there was no party entitled to foreclose on the property.  Accordingly, the Petersons have failed to plead facts demonstrating that their alleged injuries would not have occurred but for MERS's actions; regardless of MERS's conduct as the beneficiary under the deed of trust, the Petersons' property would still have been foreclosed upon based on their failure to make payments on the loan.

- 8 -

No. 67177-4-I/9

Even accepting the allegations in the complaint as true, the Petersons have failed to allege the existence of facts sufficient to establish the elements of a CPA claim against MERS.  The trial court properly granted MERS's CR 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.

III

Citibank and AHMSI assert that the Petersons' notice of appeal of the trial court's order granting the defendants' CR 12(c) motion was untimely and that, accordingly, the Petersons are not entitled to appellate review of that order.[9]  We agree.

A brief review of the procedural history of this case is necessary.  Two motions were heard by the trial court on April 22, 2011:  a CR 12(c) motion for judgment on the pleadings was brought by Citibank, AHMSI, and MERS; a CR 12(b)(6) motion to dismiss for failure to state a claim was brought by MERS alone.  The trial court granted both motions, and separate orders were signed by the judge and filed with the court clerk on that day.  These two orders—in addition to an April 22 order dismissing the Petersons' claims against Northwest—disposed of all parties and claims in the lawsuit.[10]

On May 19, 2011, the Petersons filed a timely notice of appeal from the order entered on MERS's CR 12(b)(6) motion.  The notice of appeal stated that

---

[9] Given our resolution of the initial question presented, this issue is now moot as to MERS.

[10] The Petersons do not assign error to the trial court's decision dismissing their claims against Northwest.

No. 67177-4-I/10

the Petersons were seeking "review . . . of the Order Granting [MERS's] Motion
to Dismiss entered . . . on April 22, 2011." A copy of this order, dismissing all of
the Petersons' claims against MERS and entering judgment, was attached to the
notice of appeal. The Petersons did not, however, appeal from the order on the
CR 12(c) motion brought by Citibank and AHMSI.[11]

Our court clerk thereafter notified the Petersons that it appeared that the
order dismissing the claims against MERS was not appealable as a matter of
right because it did not dispose of all claims in the case.[12] Consequently, on
June 15, the Petersons filed a document entitled "amended notice of appeal"
seeking review not only of the order dismissing the claims against MERS but also
of the order granting the CR 12(c) motion of Citibank and AHMSI. Given that the
trial court had granted both motions and entered judgments in favor of all of the
defendants, the Petersons argued that no claims remained to be litigated and
that they were therefore entitled to appeal as a matter of right. However,
because this second filing occurred well after the 30-day deadline set forth in
RAP 5.2(a), Citibank and AHMSI thereafter moved to dismiss review of the CR
12(c) order pursuant to RAP 18.9(c), which requires an appellate court to
"dismiss review of a case . . . for failure to timely file a notice of appeal."[13] It is

---

[11] Although this motion was brought by MERS as well, all claims against the company
had already been dismissed by the trial court pursuant to CR 12(b)(6).

[12] A hearing to determine the appealability of the order dismissing the Petersons' claims
against MERS was initially set for July 1, 2011. This motion was stricken following the Petersons'
clarification that all claims had been resolved as to all parties.

[13] There is no merit to the Petersons' contention that, because Citibank and AHMSI had
"the opportunity to raise this issue" during earlier correspondence with the court, they are now
precluded from doing so. "A party may include in a brief only a motion which, if granted, would
preclude hearing the case on the merits. The answer to a motion within a brief may be made

- 10 -

No. 67177-4-I/11

this motion that is now before us.

We first note that the Petersons' initial notice of appeal, which sought review only of the order granting MERS's motion to dismiss, is insufficient to permit appellate review of the trial court's order granting the CR 12(c) motion. RAP 5.3(a) specifies that a notice of appeal must "designate the decision or part of decision which the party wants reviewed" and, in general, we will not review an order that was not designated in the notice of appeal.  RAP 2.4(a); Right-Price Recreation, LLC v. Connells Prairie Cmty. Council, 146 Wn.2d 370, 378, 46 P.3d 789 (2002).  An exception to this rule exists, however, where an undesignated order "prejudicially affects the decision designated in the notice."  RAP 2.4(b). Our Supreme Court has explained that an order "prejudicially affects" the decision designated in the notice of appeal where the designated decision would not have occurred in the absence of the undesignated order.  Right-Price Recreation, 146 Wn.2d at 380.

That circumstance is not present in this case.  Here, the trial court's order granting MERS's CR 12(b)(6) motion was unrelated to and independent of the trial court's order on the CR 12(c) motion.  The order on the CR 12(c) motion did not prejudicially affect the designated order and, accordingly, the relief afforded by RAP 2.4(b) is unavailable.[14]

---

within the brief of the answering party in the time allowed for filing the brief."  RAP 17.4(d).  Here, the granting of respondents' motion to dismiss review would preclude hearing the Petersons' claims.  Accordingly, the inclusion of this motion within the respondents' brief was proper.

[14] RAP 5.3(f), which instructs an appellate court to "disregard defects in the form of a notice of appeal . . . if the notice clearly reflects an intent by a party to seek review," is similarly inapplicable.  We have determined that review of an undesignated order is appropriate under this provision where the notice of appeal "clearly reflects [the appellant's] intent to seek review of the

No. 67177-4-I/12

Nor may RAP 18.8(a) be applied to permit review of the undesignated order in this case.  This provision stipulates that "[t]he appellate court may, on its own initiative or on motion of a party, waive or alter the provisions of any of these rules and enlarge or shorten the time within which an act must be done in a particular case in order to serve the ends of justice."  RAP 18.8(a).  As the Petersons correctly point out, pursuant to this rule, we have occasionally reviewed a trial court's orders even where the notice of appeal did not designate the orders to which error was later assigned in the briefing.  See, e.g., In re the Truancy of Perkins, 93 Wn. App. 590, 594, 969 P.2d 1101 (1999), abrogated on other grounds by Bellevue Sch. Dist. v. E.S., 148 Wn. App. 205, 199 P.3d 1010 (2009); but see, In re the Estates of Foster, 165 Wn. App. 33, 44-45, 268 P.3d 945 (2011) (declining to review order that was not designated in notice of appeal), review denied, 173 Wn.2d 1032 (2012).  In Perkins, for instance, we determined that, because the State had received notice of the appeal and the appellants had set forth their assignments of error with sufficient clarity, RAP 18.8(a) should apply to permit review of the undesignated orders.  93 Wn. App. at 594.

Here, however, the Petersons' assignments of error involve not merely *orders* that were not designated in the original notice of appeal but also additional *parties*.  The trial court's order on the CR 12(b)(6) motion involved only the Petersons' claims against MERS—neither the rights of Citibank nor of AHMSI

---

issues decided" by that order.  S&K Motors, Inc. v. Harco Nat'l Ins. Co., 151 Wn. App. 633, 638-39, 213 P.3d 630 (2009).  Here, the Petersons' notice of appeal did not clearly reflect any such intent.  Accordingly, this provision does not apply to permit review.

No. 67177-4-I/13

were affected by this order.  The notice of appeal from that order gave no
indication that the Petersons had not acquiesced in the trial court's resolution of
their claims against Citibank and AHMSI.  Accordingly, at the conclusion of the
30-day appeal period, these parties were entitled to believe that the litigation
against them was at an end.[15]

As we have repeatedly explained, "'[t]he purpose of a notice of appeal is
to notify the adverse party that an appeal is intended.'"  Perkins, 93 Wn. App. at
594 (alteration in original) (quoting State v. Olson, 74 Wn. App. 126, 128, 872
P.2d 64 (1994), aff'd, 126 Wn.2d 315, 893 P.2d 629 (1995)).  This case is not
similar to Perkins, wherein the appellants' notice of appeal, while technically
deficient, clearly put the respondent on notice that an appeal was intended.  93
Wn. App. at 594.  Nothing in the notice of appeal or in the record indicates any
intent by the Petersons to preserve their claims against Citibank and AHMSI.
Accordingly, the Petersons' notice of appeal failed to fulfill the most basic
purpose of this filing requirement.  See, e.g., Cox v. Shell Oil Co., 196 S.W.3d
747, 761 (Tenn. Ct. App. 2005) (noting that, where case involves multiple parties,
designation of orders involving only a subset of those parties "undermine[s] the
notice function that notices of appeal are intended to serve").  Because the
Petersons' notice of appeal was inadequate to notify Citibank and AHMSI that an
appeal was intended, the ends of justice would not be served by disregarding the

---

[15] It is of no consequence that Citibank, AHMSI, and MERS shared the same attorney of
record.  At most, Citibank and AHMSI may be charged with knowledge that the Petersons had
appealed from the trial court's dismissal of their claims against MERS.  Indeed, given the content
of the notice of appeal, this knowledge may reasonably have created a belief by Citibank and
AHMSI that they were *not* parties to the Petersons' appeal.

No. 67177-4-I/14

requirement that a notice of appeal must "designate the decision or part of decision which the party wants reviewed."[16]  RAP 5.3(a).  Accordingly, RAP 18.8(a) does not apply to permit review.

Finally, the "amended notice of appeal" filed by the Petersons on June 15, 2011—the first document to reference the trial court's order on the CR 12(c) motion—does not meet the strict time requirements for filing set forth by our rules of procedure.  RAP 5.2(a) requires that a notice of appeal be filed within 30 days of the entry of the judgment in the trial court.  RAP 18.8(a), cited by the Petersons as a basis for deviation from this rule, does not apply where an appellant seeks additional time to file an appeal.  Instead, "[t]he appellate court will only in extraordinary circumstances and to prevent a gross miscarriage of justice extend the time within which a party must file a notice of appeal."  RAP 18.8(b).  "In contrast to the liberal application we generally give the Rules of Appellate Procedure (RAP), [this provision] expressly requires a narrow application."  Beckman v. Dep't of Social & Health Servs., 102 Wn. App. 687, 693, 11 P.3d 313 (2000).  This is because, in general, "the desirability of finality of decisions outweighs the privilege of a litigant to obtain an extension of time."

---

[16] The Petersons may not rely on RAP 5.3(h) to amend their notice of appeal in this case. This provision stipulates that an "appellate court may, on its own initiative or on the motion of a party, permit an amendment of a notice to include additional *parts of a decision* in order to do justice."  RAP 5.3(h) (emphasis added).  This is a rule of limited applicability.  It permits the amendment of a notice of appeal only to include additional "parts of a decision."  "The term 'decision' refers to rulings, orders, and judgments of the trial court."  RAP 2.1(a).  Here, the decision which the Petersons designated in the notice of appeal was the order granting MERS's motion to dismiss pursuant to CR 12(b)(6). The trial court's separate order granting the CR 12(c) motion is not a "part of" that decision.  Indeed, RAP 5.3(h) is intended merely "to address the situation in which the court makes an oral ruling, but the ruling is followed later by a written order that may or may not conform to the oral ruling."  2A KARL. B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE, RAP 5.3, at 479 (6th ed. 2004).  Accordingly, this provision cannot be invoked to permit review of the undesignated order.

No. 67177-4-I/15

RAP 18.8(b).  Thus, it is immaterial that there would be no prejudice to a particular respondent—"the prejudice of granting an extension of time would be 'to the appellate system and to litigants generally, who are entitled to an end to their day in court.'"  Beckman, 102 Wn. App. at 694 (quoting Reichelt v. Raymark Indus., Inc., 52 Wn. App. 763, 766 n.2, 764 P.2d 653 (1988)).

   The standard has been rigorously applied.  See State v. Moon, 130 Wn. App. 256, 260, 122 P.3d 192 (2005).  Only where the tardy filing has occurred due to excusable error or circumstances beyond the party's control has an extended time to file been deemed warranted.  Shumway v. Payne, 136 Wn.2d 383, 394-97, 964 P.2d 349 (1998); Scannell v. State, 128 Wn.2d 829, 834-35, 912 P.2d 489 (1996).  A lack of reasonable diligence does not amount to extraordinary circumstances sufficient to allow extension.  Beckman, 102 Wn. App. at 694.  Nor does the gravity of the appellant's claims constitute such circumstances.  In Beckman, we refused to accept notice of appeal—submitted 10 days too late—from a 17.76 million dollar judgment.  102 Wn. App. at 693-94; see also Schaefco, Inc. v. Columbia River Gorge Comm'n, 121 Wn.2d 366, 368, 849 P.2d 1225 (1993) ("We recognize that Schaefco raises many important issues . . . . However, it would be improper to consider these questions given the procedural failures of this case.").  Moreover, it is the appellant's burden to provide "sufficient excuse for [the] failure to file a timely notice of appeal" and to demonstrate "sound reasons to abandon the [judicial] preference for finality."  Schaefco, 121 Wn.2d at 368.

   Here, the Petersons have offered no excuse for their failure to file a timely

No. 67177-4-I/16

notice of appeal that properly designated the trial court's order resolving their claims against Citibank and AHMSI.  Although the Petersons contend that these parties will not be "unduly prejudiced" as a result of their untimely notice of appeal, this is not the standard applicable to a determination as to whether an extension of time is warranted.  Reichelt, 52 Wn. App. at 766 n.2 (finding lack of prejudice to respondent immaterial).  Because there is "'nothing in the nature of an event or circumstance so extraordinary in this case as to excuse'" the late notice of appeal, Beckman, 102 Wn. App. at 696 (quoting State v. One 1977 Blue Ford Pick-Up Truck, 447 A.2d 1226, 1231 (Me. 1982)), the Petersons are not entitled to appellate review of the trial court's order granting the CR 12(c) motion.

IV

      Citibank requests attorneys fees and costs on appeal pursuant to the deed of trust, which provides that the "[l]ender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument."  The Petersons assert that Citibank has not demonstrated that it is the successor in interest to ABC (the original holder of the note), and that, accordingly, Citibank is not entitled to recover attorney fees pursuant to this provision.  The trial court, however, conclusively determined that Citibank was the proper party to enforce the note and foreclose upon the Petersons' property.  Because we have determined that the Petersons are not entitled to appellate review of the order granting Citibank's CR 12(c) motion, we do not review the correctness of this legal conclusion.  The trial court's order is a final one.  Accordingly, Citibank, as the prevailing party, is

- 16 -

No. 67177-4-I/17

entitled to its attorney fees and costs on appeal.[17]

       Affirmed.

_Dwyer, J._

We concur:

_Cox, J._         _Grosse, J._

---

[17] The Petersons request their costs pursuant to RAP 14.2.  Because they have not prevailed on appeal, they are not entitled to such an award.

- 17 -

Page 36 of 36